UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| *LORNA SHIELDS,* )<br>)<br>*Plaintiff* )<br>*v.* )<br>)<br>*UNITED OF OMAHA LIFE* )<br>*INSURANCE COMPANY,* )<br>)<br>*Defendant* ) | No. 2:19-cv-00448-GZS |

### *MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S REQUEST FOR DISCOVERY*

Plaintiff Lorna Shields seeks limited discovery, as well as an opportunity to designate an expert, in this suit against defendant United of Omaha Life Insurance Company ("United") seeking recovery of life insurance benefits. *See* Plaintiff's Objection to Scheduling Order ("Motion") (ECF No. 14) at 3-4; Complaint (ECF No. 1) ¶¶ 47-59; Plaintiff's Reply in Support of Objection to Scheduling Order ("Reply") (ECF No. 21) at 7-8. Treating the plaintiff's objection as a motion for discovery, and for the reasons that follow, I grant the motion as refined in the plaintiff's reply brief and direct that the parties (i) meet and confer to attempt to agree on the manner and timing of the permitted discovery and (ii) file by May 26, 2020, a written report either setting forth any such agreement or delineating their conflicting positions. On the showing made, I deny the plaintiff's request to designate an expert.

### **I. Applicable Legal Standard**

"Discovery is the exception, rather than the rule, in an appeal of a plan administrator's denial of ERISA benefits." *Grady v. Hartford Life & Accident Ins. Co.*, Civil No. 08-339-P-H, 2009 WL 700875, at *1 (D. Me. Mar. 12, 2009). "[W]hen it comes to discovery in a case involving

1

review of an ERISA benefits determination, the law in this circuit is set by *Liston* [*v. Unum Corp. Officer Severance Plan,* 330 F.3d 19 (1st Cir. 2003)], pursuant to which [the party seeking discovery] must offer at least some very good reason to overcome the strong presumption that the record on review is limited to the record before the administrator." *Id.* (citations and internal punctuation omitted).

"Because full-blown discovery would reconfigure th[e] record and distort judicial review, courts have permitted only modest, specifically targeted discovery in such cases." *Denmark v. Liberty Life Assurance Co. of Boston,* 566 F.3d 1, 10 (1st Cir. 2009). Such discovery may be relevant and appropriate, for example, "[w]here the challenge is not to the merits of the decision to deny benefits, but to the procedure used to reach the decision," or "to explain a key item, such as the duties of the claimant's position, if that was omitted from the administrative record." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005).

## II. Factual Background

For purposes of resolving the instant discovery dispute, I use the plaintiff's version of the facts as set forth in her complaint. United denies most of those allegations at least in part, *see generally* Answer (ECF No. 10); however, the question before me is whether the plaintiff has demonstrated a need for discovery predicated on her theory of her case.

The plaintiff's late husband, Myron Shields ("Myron"), became employed by Duramax Marine, LLC ("Duramax") in 2008. Complaint ¶ 5. At that time, Duramax offered life insurance coverage to its employees through two group life insurance policies issued by United, Basic Life ("Basic") coverage in an amount equal to two times an employee's annual salary, not to exceed $300,000, and Voluntary Term Life Insurance ("Voluntary") coverage in an amount equal to one, two, or three times an employee's annual salary, not to exceed $200,000. *Id.* ¶ 6.

The Voluntary life insurance policy provided that "evidence of good health" was required for Voluntary life insurance coverage in excess of five times an insured's annual earnings or $100,000, whichever was less. *Id*. ¶ 10. On page 30 of the Certificate of Insurance, the Voluntary life insurance policy provided that United would "not use a person's application to contest or reduce insurance which has been in force for two or more years during that person's lifetime." *Id*. ¶ 11.

Pursuant to the master group policy issued to Duramax by United, Duramax was delegated responsibility for gathering from its employees records that would show, among other things, "persons insured by classification," "the amount o[f] money contributed by the Policyholder toward premiums," and other information that United might reasonably request, to be used solely for the purpose of administering the Voluntary life insurance policy. *Id*. ¶ 12. The information that Duramax was responsible for gathering from its employees included the evidence of good health required as a condition of writing coverage for Voluntary life insurance in certain circumstances. *Id*. ¶ 13. United provided Duramax with a form titled "Evidence of Good Health," with the expectation that Duramax would have the form completed by any employee who elected a level of Voluntary life insurance coverage that required proof of good health. *Id*. ¶ 14.

At the time of Myron's hire, Duramax provided him with a form titled "Salaried Election Form" that he completed and submitted to Duramax on November 3, 2008. *Id*. ¶ 15. Myron elected to receive Voluntary life insurance coverage in an amount equal to three times his basic annual salary, a total of $156,000 at that time, and designated the plaintiff as the beneficiary of that coverage. *Id*. ¶ 16.

Duramax neither provided Myron with an "Evidence of Good Health" form nor informed him that he was required to provide evidence of good health. *Id*. ¶ 17. As a result, Myron did not

submit an "Evidence of Good Health" form in connection with his application for Voluntary life insurance coverage or in any subsequent year. *Id.* ¶ 18.

On a biannual basis, United requested a census from Duramax for the purpose of renewing insurance coverage in place for Duramax's employees. *Id.* ¶ 19. United would not renew its coverage of Duramax's employees unless it received that census. *Id.* ¶ 20. On a biannual basis from 2008 until Myron's death in 2018, Duramax's insurance broker, Chapman and Chapman, Inc., sent United a census of Duramax employees' insurance coverages. *Id.* ¶ 21. In each census from 2008 until Myron's death in 2018, Myron was listed as paying a premium for Voluntary life insurance coverage in an amount equal to three times his basic annual salary. *Id.* ¶ 22. Because Myron's basic annual salary equaled or exceeded $52,000 for every year that he was employed by Duramax, he was always listed as being entitled to Voluntary life insurance coverage in an amount greater than $100,000. *Id.* ¶ 23.

Every year from 2008 until Myron's death in 2018, Duramax deducted premiums from his paycheck based on his selected Voluntary life insurance coverage, three times his basic annual salary, and submitted those premiums to United. *Id.* ¶ 30. Throughout that time, United accepted those premiums. *Id.* ¶ 31. At no time did United request "evidence of good health" from Myron. *Id.* ¶ 33.

On October 28, 2017, in response to an inquiry from Myron regarding his Voluntary life insurance coverage, Duramax informed him that he was covered for three times his basic annual salary, in the amount of $188,000. *Id.* ¶ 38. On or about June 5, 2018, Myron died. *Id.* ¶ 39. On June 7, 2018, Duramax informed the plaintiff that Myron had Voluntary life insurance coverage in amount equal to three times his basic annual salary, or $203,976. *Id.* ¶ 40. On or about June

11, 2018, the plaintiff submitted a notice of claim for Voluntary life insurance benefits in the amount of $200,000.  *Id*. ¶ 41.

On July 16, 2018, United denied the claim in part, stating that because the amount of Voluntary life insurance that Myron elected "was in excess of the Guarantee Issue Amount ($100,000.00)" and he had not submitted evidence of insurability, United "must deny benefits for the additional $100,000 of voluntary life coverage."  *Id*. ¶ 42(d).  The plaintiff twice appealed that decision, once without counsel and once with counsel, and United denied her appeals.  *Id*. ¶¶ 43-44.  On May 22, 2019, the plaintiff's counsel provided United with additional documentation detailing, *inter alia*, United's decade-long knowledge that Myron had not submitted "evidence of good health."  *Id*. ¶ 45.  On May 30, 2019, United again denied the appeal and stated that all administrative rights to appeal had been exhausted.  *Id*. ¶ 46.

The plaintiff filed the instant suit on October 3, 2019, seeking (i) recovery of plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B)  (Count I) based, *inter alia*, on United's asserted intentional waiver of its right to invoke the "evidence of insurability" condition and (ii) equitable relief pursuant to 29 U.S.C. § 1132(a)(3), to make the plaintiff whole based on United's asserted breach of its fiduciary duties (Count II).  *Id*. ¶¶ 47-59.

### III.  Discussion

The plaintiff initially sought discovery regarding four matters that she asserted were relevant to both of her claims:

1. The allocation of responsibility, as between United and Duramax . . ., for determining whether employees of Duramax were eligible for voluntary term life insurance coverage for which they paid, and United received, premiums;

2. The information available to United to determine whether Myron Shields was eligible for the voluntary term life insurance coverage for which he was paid, and United received, premiums;

    3. The efforts, if any, made by United to ensure that it accepted premiums only for voluntary term life insurance coverage for which individual employees of Duramax . . . were eligible; and

    4. The standards applied by United to determine insurability for voluntary term life insurance coverage under the policy issued to Duramax . . . (Policy No. GVTL-250H), and the practices and procedures followed by United in applying those standards.

Motion at 3-4. She added that, because her breach of fiduciary duty claim might require proof of detrimental reliance, she requested that the court modify the Scheduling Order "to allow her the time and opportunity to designate an expert on the issue of her late husband's insurability." *Id*. at 4.

    However, in her reply brief, in response to United's argument that the information sought was included in the administrative record, which was filed after the instant motion, the plaintiff narrowed the scope of discovery requested, contending that she "may need to show how and by whom the bi-annual audits of Duramax were received, to whom they were circulated, and what attention they were given." Plaintiff's Reply in Support of Objection to Scheduling Order ("Reply") (ECF No. 21) at 7-8; Defendant's Response to Plaintiff's Objection to Scheduling Order ("Response") (ECF No. 16) at 4-5. The plaintiff asserted that the administrative record revealed only that a representative of Duramax's insurance broker sent audits to United employees Kathy Lailan and Mark Claus, and that nothing of record shed light on what Ms. Lailan and Mr. Claus did with that information, with whom they shared it, or whether they or anyone else at United made an effort to confirm that participants paying for the heightened level of Voluntary life insurance coverage were qualified for it and, if not, why not. *See* Reply at 8. That is the universe of information that I construe the plaintiff to continue to seek.

    Bearing in mind that a claimant is entitled to "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits[,]" 29

C.F.R. § 2560.503-1(h)(2)(iii), but that "ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator[,]" *Denmark*, 566 F.3d at 10, and "discovery is constrained[,]" *Grosso v. Aetna Life Ins. Co.*, No. 1:12-cv-00327-GZS, 2013 WL 949494, at *1 (D. Me. Mar. 11, 2013), I conclude that, on the showing made, the limited discovery that the plaintiff seeks should be allowed.

The plaintiff argues that this is not "a simple, straightforward claim for Plan benefits" but, rather, requires the development through discovery of information that she could not have presented in the administrative process. Motion at 2-3. United protests that she fails to specify how much time she requires for discovery or what specific type of discovery she seeks and, in any event, falls short of overcoming the strong presumption that review is limited to the materials before the administrator. *See* Response at 1-5. That is so, United argues, because (i) policy provisions relieved it of any duty with respect to Myron's enrollment, (ii) even if it had a duty, that duty was not a fiduciary one, and (iii) the plaintiff's claims of estoppel and waiver fail as a matter of law. *See id.* at 3-4.

Nonetheless, United's arguments against the allowance of discovery rely on a resolution of the merits of the plaintiff's claims in its favor. The sole issue before me is whether the plaintiff has met the heightened standard for the allowance of discovery in an ERISA case, a context in which, as is true of discovery disputes generally, a ruling on the merits of the underlying claims is premature. I make no determination on the merits of the claims at issue here. However, I observe that, in responding to United's points, the plaintiff makes colorable arguments that her claims have merit.

First, as the plaintiff observes, *see* Reply at 2 n.1, the policy provision on which United relies for the proposition that it was relieved of any duty with respect to Myron's enrollment

appears in the current version of the certificate of insurance but not the version that was in force when Myron was enrolled in the plan.  *Compare* Response at 3 (noting that the policy provides that the Policyholder "'retains full responsibility for the legal and tax status of its benefits program and releases [United] from all responsibility for the reporting and the employment-based design of the program and from all other responsibilities not accepted in writing by [United's] authorized representative in [United's] home office'") (quoting Administrative Record ("A.R.") (ECF No. 15) at 00081); A.R. at 00001 *with* A.R. at 00187-00224.

Second, United argues that, even if it had a duty with respect to Myron's enrollment, it was not a fiduciary duty but an administrative one.  *See* Response at 3.  It observes that "'merely performing administrative duties, including 'advising participants of their rights and options under the plan,' is not treated as a fiduciary function.'"  *Id*. (quoting *Brenner v. Metro. Life Ins. Co*., Civil Action No. 11-12096-GAO, 2015 WL 1307394, at *9 (D. Mass. Mar. 23, 2015).  However, as the plaintiff rejoins, *see* Reply at 2, the thrust of her claim is that United breached a fiduciary duty to her and to Myron by accepting insurance premiums for Voluntary life insurance for nearly a decade without informing them that Myron did not have the coverage for which he had applied.

She notes that the policy provides, "'We approve the statement of physical condition or other evidence of good health[,]'" and that such evidence must be "'acceptable to us[,]'" Reply at 2 (quoting A.R. at 00192), citing *Lanpher v. Metro. Life Ins. Co*., 50 F. Supp. 3d 1122 (D. Minn. 2014), for the proposition that the determination of whether an individual qualifies for coverage is not an administrative duty, *see id.* at 2; *Lanpher*, 50 F. Supp. 3d at 1149-50 (insurer's exercise of discretion to determine whether insured qualified for coverage was a fiduciary rather than administrative function).  In turn, "[t]he duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of

8

ERISA." *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990); *see also, e.g., Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*, 329 F. Supp. 2d 1198, 1223 (C.D. Cal. 2004) ("Without any Plan language lending guidance to the contrary, . . . deductions and acceptances of premium payments certainly qualify as representations upon which Plaintiff could rely.").

Third, the plaintiff has colorable estoppel and waiver claims. United contends that her estoppel claim fails as a matter of law because "[t]he First Circuit has yet to clearly recognize estoppel as a basis for establishing fiduciary liability under § 1132(a)(3)" and has observed that "those courts that have recognized estoppel do so only when plan terms are ambiguous." Response at 4 (citing *Livick v. Gillette Co.*, 524 F.3d 24, 31 (1st Cir. 2008)). United argues that, in this case, the plan terms are clear: "evidence of insurability is required for 'any amount of insurance elected in excess of a Guarantee Issue A[m]ount for the Employee or Spouse.'" *Id.* (quoting A.R. at 00062) (typographical error in quotation corrected).

Nonetheless, the plaintiff makes a colorable argument that the policy language on which she relies reasonably can be construed as ambiguous: that "coverage in excess of the Guarantee Issue Limit would start when United "'approve[d] [a] statement of physical condition *or other evidence of good health*.'" Reply at 5 (quoting A.R. at 00192) (emphasis added by plaintiff). As the plaintiff points out, *see id.*, this does not clarify what "evidence of good health" consists of or whether approval must be transmitted in writing. A reasonable person in Myron's shoes could construe this to mean that his "daily presence at work could be sufficient to establish insurability," *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014), and that United's acceptance of premiums for the higher level of coverage for nearly a decade constituted approval of coverage above the $100,000 limit.

9

United contends that any waiver claim, likewise, is a nonstarter because "the doctrine of waiver cannot be used to expand coverage under a Plan." Response at 4 (citing *Heller v. Cap Gemini Ernst & Young Welfare Plan*, 396 F. Supp. 2d 10, 28 (D. Mass. 2005)). However, the plaintiff makes a colorable argument that an insurer with discretion to waive a condition precedent to coverage can waive such a condition without fundamentally altering the terms of a plan. *See* Reply at 6-7; *Marascalo v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:18-CV-141-DMB-RP, 2020 WL 42893, at *4 (N.D. Miss. Jan. 3, 2020) ("[W]hile waiver or estoppel may be used to prevent the *loss* of defined coverage . . ., the doctrines may not be used, for example, to expand an employee insurance policy to a non-employee, or to a pre-existing condition expressly excluded from coverage.") (footnotes omitted) (emphasis in original); *Gaines*, 329 F. Supp. 2d at 1222 (employer and insurer who "knew Plaintiff (and indeed many others) had not submitted a personal health statement, knew of the coverage being purchased, knew that premiums were being paid for that coverage, and received and accepted payments without giving any indication that any of the . . . employees had failed to comply with a precondition to obtaining insurance coverage" waived the "right to require the submission of a personal health statement").

Beyond this, and to the point, the plaintiff meets her heightened burden of demonstrating a need for the discovery sought; namely, discovery as to what Ms. Lailan and Mr. Claus did with the information contained in the biannual audits sent to them by Duramax's insurance broker, with whom they shared it, or whether they or anyone else at United made an effort to confirm that participants paying for the heightened level of Voluntary life insurance coverage were qualified for it and, if not, why not. *See* Reply at 8.

Whether discovery is warranted in an ERISA case depends in part on whether and in what respect the information sought to be discovered "*matters*." *Liston*, 330 F.3d at 25 (emphasis in

original); *see also Orndorf*, 404 F.3d at 519 (noting that "[w]hether evidence is admissible turns on the nature of the challenge to the decision; the answer to the question is not likely to turn on whether the standard of judicial review is de novo or arbitrary and capricious").

The plaintiff persuasively argues that the information she seeks, which is not of record, may be critical to her ability to prove her claim of waiver – the intentional relinquishment of a known right. *See* Reply at 7; *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 587 (1st Cir. 1993) ("To be valid, a waiver of ERISA benefits must be an intentional relinquishment or abandonment of a known right or privilege.") This is precisely the kind of situation in which the First Circuit has recognized that extra-record discovery is appropriate. *See, e.g., Orndorf*, 404 F.3d at 520 (observing that "evidence outside the administrative record might be relevant to a claim of personal bias by a plan administrator or of prejudicial procedural irregularity in the ERISA administrative review procedure"); *see also, e.g.*, *Parenzan v. Metro. Life Ins. Co.*, Civil Action No. 2:09-cv-0649-CWH, 2009 WL 10710810, at *1 n.2 (D.S.C. Sept. 11, 2009) ("In actions asserting equitable claims, such as waiver, estoppel and equitable restitution pursuant to § 1132(a)(3)(B), a limited amount of discovery to augment the administrative record is appropriate.").

Accordingly, the plaintiff meets the heightened standard for the allowance of discovery in an ERISA case. However, on the meager showing made, she has not justified her request to name an expert.

Therefore, treating the plaintiff's objection as a motion for discovery, I **GRANT** the motion with respect to information bearing on what United did with biannual audit information sent to it by Duramax's insurance broker, **DENY** it, on the showing made, with respect to her request to designate an expert, and **DIRECT** that the parties (i) meet and confer to attempt to agree on the

manner and timing of the permitted discovery and (ii) file by May 26, 2020, a written report either setting forth any such agreement or delineating their conflicting positions.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 23rd day of April, 2020.

                                        /s/ John H. Rich III
                                        John H. Rich III
                                        United States Magistrate Judge